Filed 5/12/21  P. v. Myers CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID EARL MYERS,<br><br>    Defendant and Appellant. | F080177<br><br>(Kern Super. Ct. No. FP004465A)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Gregory A. Pulskamp, Judge.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Hill, P.J., Levy, J. and Detjen, J.

## INTRODUCTION

Appellant David Earl Myers[1] was recommitted to the Department of State Hospitals as a mentally disordered offender (MDO) after a bench trial.  On appeal, her appellate counsel has filed a brief that summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record to determine whether there are any arguable issues pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*).

We dismiss the appeal for the reasons explained below.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 1999, appellant (born 1952) approached two male minors who were playing near a church and asked whether they needed help.  The minors ignored her.  Appellant patted her groin and told one minor that she wanted the minor to touch appellant's "private part."  As the minors started to walk away, appellant told them, "I am going to come back and take you away tonight."  The minors ran home, but appellant followed them on a bicycle and again said, "I am going to take you."  The mother of one of the minors saw appellant, called the police, and appellant was arrested shortly afterwards.

In 2001, appellant was sentenced to six years in prison after pleading guilty to annoying or molesting a child under the age of 18 years (Pen. Code, § 647.6, subd. (c)(1)).[2]

In October 2007, appellant was certified by the Board of Parole Hearings for treatment under section 2970.

---

[1] According to appellate counsel, appellant "currently identifies as female and uses the name Susie.  Since the case was filed under her old name, appellate counsel has continued to use it in this brief but will refer to appellant using female pronouns."  This opinion will similarly refer to appellant using female pronouns.

[2] All further statutory references are to the Penal Code unless otherwise stated.

In August 2008, after a bench trial, the court found appellant was a mentally disordered offender and committed her to the Department of State Hospitals (DSH). Appellant was admitted to Coalinga State Hospital.

Thereafter, the Superior Court of Kern County conducted annual hearings from October 15, 2008, to October 15, 2019, and determined appellant met the criteria to extend her commitment each year.

**The current petition**

On or about July 19, 2019, a petition was filed in the Superior Court of Kern County pursuant to section 2970 to again extend appellant's commitment as an MDO.

On October 9, 2019, appellant's attorney advised the court that appellant was going to waive her right to a jury trial, she had a jury trial two years earlier, and she understood the process. The court advised appellant that she had the right to a jury trial on the petition for recommitment. Appellant personally waived her right to a jury trial, and the court conducted a bench trial.

**Evidence introduced at the hearing on the current petition**

Dr. Zahida Azam, a psychiatrist at Coalinga State Hospital, testified appellant was previously diagnosed with bipolar disorder. Appellant was compliant with orders for psychotropic medications and took Abilify, an antipsychotic medication for bipolar disorder, and Mirtazapine, an antidepressant used to encourage sleep.

Dr. Jyoti Rajpoot had been appellant's psychiatrist since January 2019 and saw appellant monthly. Dr. Rajpoot testified that, in addition to the psychotropic medication, appellant also took medication for a heart condition, cholesterol, anticlotting medication, and hormone therapy for her transitioning.

Richard Madero, a social worker at Coalinga State Hospital, was a member of appellant's treatment team. Madero worked with appellant to develop skills she needed for community integration, including her discharge plan. Madero testified appellant was unwilling to participate in discharge planning because it conflicted with her work

3.

schedule at the hospital, and she needed to earn money. Appellant said she would take discharge planning if it was offered on Fridays or Saturdays, but that was not possible. Madero enrolled appellant in the sex offender treatment, but she never attended any sessions. Madero explained that the staff cannot force someone to attend the sessions. Appellant's team determined she had not met the discharge criteria.

**Appellant's possession of child pornography**

The district attorney introduced evidence about an incident in 2015, when appellant was found in possession of and watching child pornography.

Thomas Hall testified that he was a patient at the hospital and was convicted of oral copulation of a minor in 2000. It was stipulated that Hall also had prior convictions for three counts of violating section 288a in 1993 and two counts of violating section 290, subdivision (g)(2) in 2000.

Hall testified that at the hospital, he was the chair of the unit advisory council, that was a leadership position to maintain peace, advocate for patients, and act as an intermediary between the staff and the patients.[3]

Hall testified that on August 5, 2015, he was housed in the same unit as appellant. He was looking for another patient and walked by appellant's room. Hall testified appellant was watching a video on a DVD player. Hall knew appellant had recently earned enough money to purchase the DVD player. Hall testified that he saw the screen for about 40 seconds, and believed the DVD was showing nude children engaging in lewd and sexual behavior. Hall did not believe appellant saw him. Hall was taken aback by what he saw because such contraband was not commonly found in the unit. He immediately notified a staff member.

---

[3] Hall testified that at the time of appellant's trial, he had completed all required counseling and services, he had been ordered released, and he was awaiting placement in the community.

4.

Luis A. Solorio, a psychiatric technician at the hospital, testified that appellant resided in his unit with other MDOs. It was standard protocol to search patients' rooms for contraband at least once a week, and he had searched appellant's room on previous occasions.

Solorio testified Hall approached him in the unit's dayroom and advised him about what he had seen. Solorio immediately went to appellant's room, where appellant was removing a gold colored disc from a DVD player. Solorio asked appellant what was on the disc. Appellant said she did not know, the disc was not working, and she needed a new DVD player.

Solorio testified patients were allowed to have DVDs and order discs manufactured and purchased from certain catalogues approved by the hospital. They are not allowed to have blank discs. Solorio could see that the disc did not have a movie title printed on it.

Solorio did not touch or play the disc, contacted the hospital's Department of Police Searches, and requested officers to respond to appellant's room. Solorio advised appellant that the officers were going to seize the disc. Appellant became upset and said the staff was not supposed to search her property and take DVDs away from her. She said she was going to report them to Sacramento.

Officers Pizarro and Alvarez responded to appellant's room. Solorio advised them about the situation, and that the disc might contain child pornography. Alvarez seized the gold DVD disc, the DVD player, and additional DVDs that were in appellant's room.

Officer Pizarro spoke to Hall about his observations. Based on Hall's report, Pizarro determined the unlabeled gold disc was contraband because it was not a manufactured DVD. Pizarro also spoke to appellant, who said the gold disc was left on her bed, she thought it contained movies, and she did not know who it belonged to. Appellant said she tried to watch the disc, but it did not work on her DVD player.

Sergeant Jerry Duvall, also with the hospital's police unit, attempted to speak to appellant about the incident, but she declined to answer questions.

Sergeant Duvall obtained a search warrant to examine the gold DVD disc seized from appellant's room using scanning software. The DVD was not within a commercial sleeve. Duvall recognized the titles on multiple files and folders from recent investigations as likely being child pornography. Duvall testified there were 84 video files on the gold disc that constituted child pornography and depicted children, primarily boys, engaging in sexual acts with other boys and adult males. There was no contraband on the other discs seized from appellant's room, which were in separate sleeves and consisted of commercial movies and music.

## Expert testimony

Dr. Robert Wagner, a clinical psychologist for the DSH, first evaluated appellant in 2014 and has done so every year since. Dr. Wagner again evaluated appellant in February 2019.

Dr. Wagner diagnosed appellant with pedophilic disorder and bipolar disorder. Dr. Wagner testified that appellant continued to take medication to deal with bipolar disorder, and the disorder was under control.

Dr. Wagner considered pedophilia disorder to be a lifelong mental disorder that would not go into remission, and the goal was to help people manage their urges and fantasies. If a pedophiliac says that he or she no long has such urges and fantasies, the pedophilia disorder remains a diagnosis. Dr. Wagner considered appellant's pedophilia restrained only because of her custodial status in a child-free environment at the state hospital, and believed she continued to suffer from pedophilia disorder.

When Dr. Wagner first interviewed appellant in 2014, she said that she had been in sex offender treatment but had been kicked out. She claimed not to have a pedophilic disorder, she was only interested in men or women her age or older, and she had never

been interested in children. Dr. Wagner testified that appellant's claim that she had no interest in children was contradicted by the police reports and other documents.

In 2015, appellant told Dr. Wagner that she was in sex offender treatment, and she did not want to reoffend. Appellant showed her sex offender treatment workbook, where she acknowledged that she was willing to talk about her crimes, her drug and alcohol use, and that she was trying to work on these things. Dr. Wagner was of the impression that appellant was genuinely trying to work on her mental health issues.[4]

Dr. Wagner did not recommend appellant's release in 2016 but was encouraged by her stated intent to make progress and work on her problems.

In 2017, appellant told Dr. Wagner that she quit attending the sex offender treatment program because she was not getting anything out of it; she wanted to be happy and not waste her time looking for kids. Appellant discussed having been married to a woman, they went on a honeymoon in Las Vegas, and they had a young daughter who was living with her mother. Dr. Wagner had been unable to determine whether appellant's claims were real or delusional.

In 2018, appellant told Dr. Wagner that she stopped attending group therapy because she did not like the way it was being run; she claimed they had "introduced gangs" into the group. Appellant said she no longer had any desire for sex because of her age and did not have any interest in children. Dr. Wagner did not believe appellant's statements because pedophilia is a lifelong disorder and never goes into remission. Instead, a pedophiliac will struggle to contain and control his or her urges based on learned coping mechanisms.

In February 2019, appellant told Dr. Wagner that she did not need sex offender treatment because she was not a pedophile, and she had never been interested in children.

---

[4] It was in August 2015 that appellant was seen watching and found in possession of the disc that contained child pornography and claimed she did not know what was on the disc and it would not work on her DVD player.

Dr. Wagner asked appellant about her conviction, and appellant claimed that the boys took her actions wrong; she was only trying to help them; and the police lied in their report. Appellant also said that her substance abuse was involved in her criminal convictions, and she had previously completed a substance abuse treatment program at another facility. Dr. Wagner was concerned that appellant failed to attend any maintenance programs because it was easy to relapse upon being released.

Dr. Wagner testified that he hoped appellant would admit her problem and seek treatment, and he was concerned because she failed to do so. Dr. Wagner did not believe appellant was ready for participation in a conditional release program. Appellant's score on the Static-99R was an eight, and that indicated appellant had a predicted recidivism rate for reoffending of around 35 percent, with a range of 30 to 40.1 percent over five years; that was in the above-average risk range. Appellant's attendance and completion of sexual offender therapy would help reduce her risk range.

While appellant's bipolar disorder appeared to be controlled by medication, Dr. Wagner also wanted appellant to address her pedophilia disorder. Dr. Wagner was not aware of any medication that could stop someone from being a pedophile. Appellant's pedophilia was still active, she still represented a substantial danger of physical harm to others, and her repeated denials were not helpful. Dr. Wagner wanted appellant to be actively engaged in or completing sex offender treatment given her repeated denials of her "well-documented history of attraction to children and crimes involving that that she's done prison terms for." Dr. Wagner concluded appellant was not ready to be discharged and should be recommitted.

**The court's ruling**

On October 15, 2019, after conducting the bench trial, the court granted the petition to extend appellant's commitment for one year, up to October 15, 2020. The court acknowledged that appellant was in compliance with all medications, and there was no evidence that appellant committed any acts of physical violence within the prior year.

The court found it "in counterbalance" that appellant had not complied with the other parts of her treatment program, notably her failure to meaningfully participate in the sex offender treatment program, discharge planning, and programs to maintain her sobriety. The court found appellant's failure to comply with treatment was "very significant" and caused "great concern." The court additionally cited appellant's possession of child pornography, that Hall saw appellant watching the child pornography on the DVD player, and appellant's denial that she knew what was on the disc. The court noted Dr. Wagner's testimony that appellant repeatedly denied she suffered from pedophilia and was highly at risk for reoffending.

The court found beyond a reasonable doubt that appellant had a severe mental disorder; her severe mental disorder is not in remission; she represented a substantial danger of physical harm to others; and the court recommitted appellant to the Department of State Hospitals for continued treatment at Coalinga State Hospital, up to October 15, 2020.

On October 23, 2019, appellant timely filed a notice of appeal.

## **DISCUSSION**

As noted above, appellant's counsel has filed a *Wende/Anders* brief with this court and requests this court independently review the entire record on appeal in this case.

The brief also includes the declaration of appellate counsel indicating that counsel advised appellant of the nature of this brief, her right to file a supplemental brief, that in the supplemental brief she may bring to the court's attention any issues she believes deserve review, that present counsel will send appellant a copy of the record on appeal for the purpose of preparing a supplemental opening brief, and appellant may ask the court to relieve present counsel.

By letter on August 7, 2020, we invited appellant to submit additional briefing. To date, she has not done so.

9.

In *Conservatorship of Ben C.* (2007) 40 Cal.4th 529, the California Supreme Court concluded that *Wende* and *Anders* procedures do not apply to conservatorship proceedings under the Lanterman-Petris-Short Act (Welf. & Inst.Code, § 5000 et seq.). Subsequently, the Second District Court of Appeal held that, under the rationale of *Ben C.*, the *Anders/Wende* review procedures do not apply to postconviction commitments under the MDOA. (*People v. Taylor* (2008) 160 Cal.App.4th 304, 312 (*Taylor*).)

Appellate counsel acknowledges *Taylor*, disagrees with it, but concedes it now appears to be well-established California law. We find the reasoning in *Taylor* persuasive and apply it here.

We have reviewed the brief submitted by appellant's appointed counsel. We decline to exercise our discretion to review the record for error. Competent counsel has represented appellant in this appeal.

## DISPOSITION

The appeal is dismissed.